UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| RYAN G. WILLIAMSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV419-050 |
| | ) | |
| CHATHAM COUNTY DETENTION CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# **ORDER**

Proceeding *pro se* and *in forma pauperis*, plaintiff Ryan G. Williamson brings this 42 U.S.C. § 1983 action against the Chatham County Detention Center and two medical providers. Doc. 1. The Court now screens the Complaint pursuant to 28 U.S.C. § 1915A, which requires the immediate dismissal of any *pro se* complaint that fails to state at least one actionable claim.[1]

Williamson alleges that he "verbally announced" to medical staff that he needed serious medical attention, but his complaint was

---

[1] Because the Court applies Fed. R. Civ. P. 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

ignored. Doc. 1 at 3 (explaining that "this took place 7-19-2017 — 7 24 2017" and that at some point he filed a complaint in the grievance kiosk). After some delay, and (perhaps) as a result of that delay in treatment, he was taken to the "ER" and received "emergency open heart surgery" to "put heart valve replacements" in his chest. *Id.* What his symptoms were, however, remains a mystery to the Court.

Williams does explain, however, that he was seen by medical staff — they just missed the serious nature of his condition. Doc. 1 at 5. After "call[ing] a code due to excruciating pains in [his] stomach," Nurse Jackie and Dr. Smith examined Williams, determined he "should have taken [his] heart burn meds," and sent him back to his cell. *Id.* He remained in pain for days and was eventually given Tylenol because he was running a fever. *Id.* He now seeks to sue the jail "for neglect," for his medical expenses, and for his pain and suffering, in a total demand for $10 million. *Id.* at 6.

It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (cites and footnotes omitted). A

prisoner states a valid claim, under 42 U.S.C. section 1983, "whether the indifference is manifested by prison doctors in their response to the prisoner's needs . . . or by prison guards in intentionally denying or delaying access to medical care . . . or intentionally interfering with treatment once prescribed." *Id.* at 104-05.

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). First, the plaintiff must prove an objectively serious medical need. *Id.* "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (*citing Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (cite and internal quote omitted).

Second, the plaintiff must prove that the prison official acted with deliberate indifference to that need. *Id*. To establish this second element, the prisoner must prove three facts: (1) subjective knowledge

of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Plaintiff's medical need eventually became serious—he alleges that he eventually received heart surgery—but there is nothing in the record to tell the Court what the medical need was at the time plaintiff requested treatment. Even assuming that his pre-open heart surgery complaints presented a serious medical need, Williams' allegations make it clear that he *was* treated — albeit (in his view) in a grossly deficient manner. He was seen by medical staff and they misdiagnosed him as being noncompliant with his heartburn medication. (Mis)diagnoses and delayed treatment, of course, do not often rise above mere malpractice. *See, e.g., Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Estelle*, 429 U.S. at 106) ("Mere incidents of [medical] negligence or malpractice do not rise to the level of constitutional violations."); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) ("mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" do not give rise to § 1983 liability). Given the bare-bones nature of plaintiff's pleading, however, it may be

that the actual presentation of his illness was sufficiently serious that the delay in treatment rises beyond mere negligence.

Plaintiff's complaint also does not plead any facts establishing the second element, namely that there was a subjective knowledge of a risk of serious harm. Plaintiff's complaint merely states that he needed medical attention and was treated by medical staff. The phrase heart valve "replacement," perhaps, indicates that plaintiff had a preexisting condition that ought to have tipped off medical staff about the seriousness of his condition, such that their lack of treatment was so inadequate as to amount to no treatment at all. *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir.1989) ("When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."). But the threadbare allegations in plaintiff's complaint make it impossible to determine if this is so. Altogether, plaintiff's complaint is insufficient at this stage. Nevertheless, the Court will grant plaintiff the opportunity to replead. *See, e.g.*, *Johnson v. Boyd*, 568 F. App'x 719, 724 (11th Cir. 2014) (pro se plaintiff may receive a chance to amend); *Duff v. Steub*, 378 F. App'x

868, 872 (11th Cir. 2010) (amendment properly granted when more carefully crafted complaint may state a claim).

Accordingly, plaintiff is **DIRECTED** to file an Amended Complaint within 30 days from the date of this order or face a recommendation of dismissal.[2]  Williamson is advised that his Amended Complaint will supersede the original Complaint and therefore must be complete in itself.[3]  Once he files an Amended Complaint, the original pleading will no longer serve any function in this case.

Meanwhile, it is time for Williamson to pay his filing fee. His PLRA paperwork reflects $164.65 in average monthly deposits and a $13.89 average monthly balance over the six-month period prior to the date of his Prison Account Statement. Doc. 9. He therefore owes a

---

[2]  Williams' Amended Complaint must include a *coherent* "short and plain statement of the claim showing" that he is entitled to the relief sought. Fed. R. Civ. P. 8(a)(2). That means he must present the Court with the factual allegations that support his constitutional claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (complaints must contain factual allegations "sufficient to raise a right to relief above the speculative level"). Mere conclusions that defendant violated the law are not enough. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Clerk of Court is **DIRECTED** to include with service of this Order a blank copy of the Southern District of Georgia's form prisoner § 1983 Complaint.

[3] *See Malowney v. Fed. Collection Deposit Grp*, 193 F.3d 1342, 1345 n. 1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint"); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading").

$32.93 initial partial filing fee. See 28 U.S.C. § 1915(b) (1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall remit the $32.93 and shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.[4]

**SO ORDERED,** this 10th day of April, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[4] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.